# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

MCRAE LAW FIRM, PLLC                                                            PLAINTIFF

V.                                                      CAUSE NO. 3:17-CV-412-CWR-FKB

BARRY WADE GILMER, et al                                                      DEFENDANTS

## ORDER

This case is a messy dispute between attorneys over legal fees. This conflict has blazed a path of destruction through multiple courts in this state, including this one.

## I. Factual and Procedural History

The complaint alleges that Barry Gilmer, his law firm, and his son Matthew Wade Gilmer conspired and colluded with Seth Little to prevent Chuck McRae from getting a cut of a settlement that was reached in a state court matter (the "Gibson matter").

In short, Little originally worked for Gilmer and they were retained to represent Gibson in a malpractice suit. Little left Gilmer's firm, but kept working on the Gibson matter. After leaving Gilmer's firm, Little started working for McRae as a contract attorney on an hourly basis. While Little was working for McRae, Little represented Gibson at the Mississippi Supreme Court and was successful on the appeal. Gilmer and Little then negotiated a settlement of the Gibson matter, where the attorney's fees would be approximately $300,000.

McRae claims Little conspired with the Gilmers to keep him out of the settlement. He says he is owed for the work Little did while employed by him. The Gilmers and Little claim McRae was never involved in the case in any way and repeatedly expressed that he wanted nothing to do with it. Both sides dispute the other's account of events. The Court need not recount all of the jabs and accusations thrown back and forth.

Originally, McRae filed an action in state court, which Barry Gilmer unsuccessfully attempted to remove to this court on several occasions.[1] McRae then filed this action, and after two amendments of his complaint, he alleges violations of the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), federal common law claims of civil conspiracy and aiding and abetting liability, and violations of the Electronic Communications Privacy Act and the Stored Communications Act. McRae also alleges various state law claims including conversion, embezzlement, breaches of loyalty and fiduciary duties, negligence, reckless disregard of rights, and gross negligence. Originally, other defendants were involved, but because of various settlements only the Gilmers, Little, and each of their respective law firms (collectively "the defendants") remain. The defendants all make the same argument: the complaint fails to state a claim upon which relief may be granted.[2]

## II. Legal Standard

Rule 12(b)(6) authorizes dismissal of actions that fail to state a claim upon which relief may be granted. To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks and citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

---

[1] Matthew Gilmer has now attempted to remove the state court action, again. *See* 3:19-cv-124-CWR-LRA. McRae has moved to remand it. The Court will handle that motion in due course.

[2] The defendants argue that the amended complaint fails on its face because McRae has not attached a RICO statement in accordance with Local Uniform Rule of Civil Procedure 83.8. While McRae did not file a RICO statement with his second amended complaint, he did file one with his initial complaint. *See* Docket No. 3. Satisfying this procedural pleading requirement element is necessary and McRae claims that he satisfied it when he filed his original RICO statement. Given McRae's previously filed statement and his contention to the Court that he will refile it, if so ordered, the Court will not dismiss the complaint on this procedural point.

When considering a motion to dismiss, the Court accepts the plaintiff's factual allegations as true and makes reasonable inferences in the plaintiff's favor. *Id.* "Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.,* 394 F.3d 285, 288 (5th Cir. 2004) (citation omitted).

**III.    Discussion**

   **A.    RICO Claims**

McCrae says the crux of his federal jurisdiction is a violation of the RICO statute. As the Fifth Circuit has held:

> To establish a civil-RICO claim, a plaintiff must establish three common elements: (1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise. A pattern of racketeering activity consists of two or more predicate criminal acts that are (1) related and (2) amount to or pose a threat of continued criminal activity. The predicate criminal acts can be violations of either state or federal law.

*Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 523–24 (5th Cir. 2016) (quotation marks and citations omitted).

Here, McRae alleges federal mail and wire fraud as the necessary predicate criminal activity. *See* Docket No. 75 at ¶ 86; *see also* 18 U.S.C. §§ 1341, 1343, 1964(c), 1961(1)(B), 1962. McRae includes broad accusations that the defendants used the mail and electronic communication to conspire and defraud him.[3] For example, McRae alleges that "Little utilized McRae Law Firm computers, internet connections, and electronic mail to send and receive documents and other communications involving the Gibson matter with and among the other named Defendants in this lawsuit." Docket No. 75 at ¶ 53. He makes the same allegations of all

---

[3] Later in his complaint McRae alleges violations of the Electronic Communications Privacy Act and the Stored Communications Act as separate causes of action outside of the RICO violation. *See* 18 U.S.C. § 2701. If violated, both of those statutes could serve as the predicate criminal activity necessary to invoke a RICO violation. Even if they had been pled as the predicate acts, however, the RICO violation would still fail for lack of continuity.

3

the defendants and includes similar conclusory allegations regarding interstate commerce. *Id.* at ¶¶ 53–59.

These are not factual allegations of mail and wire fraud: they are descriptions of the practice of law. With only facts like that, McRae is asking the Court to make the leap that these allegations constitute "transmissions [defendants made] in order to facilitate a fraudulent enterprise which [they] knew was designed to deprive the Plaintiff of business and property, and to deceive Plaintiff." *Id.* at ¶ 54. McRae is asking the Court to assume that what seem like reasonable communications regarding a case were actually mail and wire fraud. That is a tough leap.

Even if the Court gives McRae wide latitude in establishing the predicate act, it is the pattern of such acts where the RICO claim ultimately fails. "Assuming that predicate acts exist, one still must plead a pattern of such acts, which requires the plaintiff to plead both that the predicate acts are related to each other and that they either constitute or threaten long-term criminal activity." *In re Burzynski*, 989 F.2d 733, 742 (5th Cir. 1993) (quotation marks and citation omitted). "It is 'continuity' that assures a federal cause of action." *Id.* "There are two ways to demonstrate continuity: (1) a closed period of repeated conduct; or (2) an open-ended period of conduct that by its nature projects into the future with a threat of repetition." *Malvino v. Delluniversita*, 840 F.3d 223, 231 (5th Cir. 2016) (quotation marks and citations omitted).

"A closed period of repeated conduct requires predicate acts that extend over a 'substantial period of time.'" *Id.* at 232 (citations omitted). As Little points out, "[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 242 (1989). For example, ten months of activity has been

found to be insufficient. *Malvino,* 840 F.3d at 231 (citing *Wisdom v. First Midwest Bank,* 167 F.3d 402, 407 (8th Cir. 1999)). According to defendants, the alleged racketeering spans approximately four months from February 2016, when the Gibson matter was reversed at the Mississippi Supreme Court, until June of 2016, when a settlement was reached and McRae did not receive a cut of the fees. *See* Docket No. 84 at 6–8.

In response, McRae claims that defendants acted to "conceal the very existence of the Gibson settlement" from him, thus the enterprise covered a much longer time span. Docket No. 90 at 13. McRae points to several paragraphs within his complaint to support this position. *See* Docket No. 75 at ¶¶ 36–48. However, those paragraphs of the complaint, if taken as true, list dates during the same four-month time frame in 2016.[4]

Further, McRae argues that "the enterprise continues to this day, in the form of false affidavits and stolen privileged communications, which have been repeatedly published in this and other litigation for the express purpose to discredit and further injure Plaintiff." Docket No. 90 at 13. As the Fifth Circuit has stated,

> An open-ended period of conduct involves a threat of continued racketeering activity and may be established by a showing that there is a specific threat of repetition extending indefinitely into the future, or that the predicates are a regular way of conducting a defendant's ongoing legitimate business.

---

[4] Outside of the paragraphs McRae references, there are two factual allegations in the complaint that occurred outside of this time frame. They are not allegations, however, that give rise to a RICO violation because they do not describe any predicate criminal activity. First, McRae references one email that was sent from Little to Gilmer in 2014. McRae admits that he was copied on this email and the email was regarding an appeal of the trial court order. *See* Docket No. 75 at ¶ 66(a). The factual allegation does not support any sort of predicate criminal act; it is a description of someone practicing law. Second, McRae alleges that from October 2014 through February 2016, Little obtained $3,092.50 from McRae to pay for various expenses related to the Gibson matter. *Id*. at ¶ 66(b). McRae alleges that these funds were obtained and spent through the United States Postal Service and electronic communications. McRae does not allege that he did not willingly give Little these funds; to the contrary, McRae claims that he readily paid Little and fronted expenses for the Gibson matter. He does not allege that the funds were spent on illegal matters. Rather, his description is that they were legal expenses. Again, this is not an allegation of a federal crime. It is a description of the practice of law.

*Malvino*, 840 F.3d at 232 (quotation marks, brackets, and citations omitted). McRae's allegation is that information was stolen from him and is now being used in this litigation. This is not a threat of continued criminal activity. There is no allegation that this conduct will continue indefinitely or that this is how the defendants operate, outside of this lone fact scenario.

The facts of this matter remain: McRae claims that he was left out of a fee agreement on a case. This might well be true, but this does not rise to the level of a RICO claim. The allegations of a predicate criminal act are weak and there are no allegations that support the inference of an ongoing and long-term criminal enterprise. Therefore, the motions to dismiss regarding the RICO claims are granted.

### B. Electronic Communications Privacy Act and Stored Communications Act

McRae then claims violations of the Electronic Communications Privacy Act and the Stored Communications Act. McRae alleges that Little "accessed and obtained" two emails after he was no longer employed at the McRae firm and then he shared those emails with Barry Gilmer, who has published them in court filings.

First, to prove either claim, a party must allege that the defendant intentionally accessed certain electronic communications. There is no allegation that Barry Gilmer accessed the emails. He is only accused of getting a copy of them from Little and publishing them in court filings. Thus, these claims against Gilmer are dismissed.

Now, to focus exclusively on Little. Little correctly argues that the Electronic Communications Privacy Act addresses cases where the accused accesses the communication in real time. "All of the circuit courts that have considered the issue have therefore . . . concluded, like the Fifth Circuit, that the acquisition of a communication must be contemporaneous with its transmission in order for an 'intercept' to occur." *Luis v. Zang*, 833 F.3d 619, 628 (6th Cir. 2016)

(citing *Steve Jackson Games, Inc. v. U.S. Secret Service*, 36 F.3d 457 (5th Cir. 1994)). McRae claims that "Little obtained two pieces of electronic mail" and when "Little accessed and obtained the electronic mail, he was not an employee or agent of McRae Law firm. He had no legal right to access or obtain any such mail." Docket No. 75 at ¶¶ 100–01. McRae makes no allegation that in real time Little hacked into the email server and intercepted McRae's communications. McRae argues that he has no way of knowing how Little obtained the email without discovery, so this claim should not be dismissed.[5] Yet, he has not even made an allegation through notice pleading that such an interception took place.

This leads to McRae's related argument: that Little violated the Stored Communications Act when he allegedly stole McRae's stored emails. The Stored Communications Act ("SCA") criminalizes "intentionally access[ing] without authorization a facility through which an electronic communication service is provided . . . and thereby obtain[ing], alter[ing], or prevent[ing] authorized access to a wire or electronic communication while it is in electronic storage in such system . . . ." 18 U.S.C. § 2701(a)(1). "A private person aggrieved by such a violation may pursue a civil recovery." *River Realty LLC v. River Realty LLC*, No. CV 09-7462, 2010 WL 11545326, at *5 (E.D. La. Aug. 2, 2010) (citing 18 U.S.C. § 2707(a)).

McRae has alleged that Little stole stored emails when he did not have access to them; now those emails are preventing McRae from prevailing in his recovery against defendants and have caused him harm and embarrassment in the public eye. The Court is skeptical of McRae's ability to prove this claim, though the Court is not at the stage to make a factual determination. Further, this theory for damages is tenuous. Yet, he has satisfied his pleading requirement on this

---

[5] Factually speaking, as the owner of the email host, McRae does have a way of discovering if his servers were hacked.

claim against Little. The Court anticipates that this is a narrow factual dispute that can be quickly resolved upon further motion and evidence provided to the Court.

### C. Federal Common Law Claims

McRae also asserts two federal common law claims of civil conspiracy and aiding and abetting liability. He provides no legal support for how these claims invoke federal jurisdiction. When it comes to federal common law claims, this Court may "exercise federal question jurisdiction over the action only if we f[ind] that the action f[alls] within the narrow class of cases where federal rules are necessary to protect uniquely federal interests." *Coop. Ben. Adm'rs, Inc. v. Ogden*, 367 F.3d 323, 329 (5th Cir. 2004) (quotation marks and citation omitted). McRae's federal common law claims do not invoke uniquely federal interests. To the contrary, the federal common law claims seem totally covered by his state law claims.

### D. State Law Claims

In total, McRae alleges nine different state law tort claims: conversion, embezzlement, breach of loyalty, breach of fiduciary duty, negligence, bad faith, reckless disregard of others' rights, disgorgement of all fees, and gross negligence. The district court may decline to exercise supplemental jurisdiction over a claim if "the district court has dismissed all claims over which it has original jurisdiction" or "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(3)–(4). Other relevant factors include "judicial economy, convenience, fairness, and comity." *Alphonse v. Arch Bay Holdings, L.L.C.*, 618 F. App'x 765, 769 (5th Cir. 2015) (citing *Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.*, 554 F.3d 595, 601–02 (5th Cir. 2009)).

First, the Court would note that it has dismissed all federal claims except one narrow claim against one remaining party. Second, this case is without a doubt "exceptional" because of

its path across multiple courts. These state law claims were in the process of being tried in state court and while that case has recently been removed to this Court, that does not mean that it will stay here. For the sake of judicial economy and fairness, the Court declines to exercise supplemental state law jurisdiction.

**IV.    Conclusion**

The only facet of this dispute that may proceed is the claim against Little for violation of the Stored Communications Act. The Court anticipates there is readily available factual evidence which may resolve the final leg of this dispute in this Court. As such, the motions to dismiss are granted in part and denied in part. All defendants are terminated besides Little.

The remaining parties are ordered to contact the Magistrate Judge's chambers within 10 days to set up a case management conference. This Court encourages abbreviated and accelerated discovery to resolve the final remaining claim.

**SO ORDERED**, this the 29th day of March, 2019.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE